611 P.2d 117

STATE of Arizona, Appellee,

v.

Paul Steven REYNOLDS, Appellant.

Nos. 1 CA–CR 3526, 1 CA–CR 3598.

Court of Appeals of Arizona,
Division 1, Department C.

March 27, 1980.

Rehearing Denied May 8, 1980.

Review Denied May 20, 1980.

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, and Lynn Hamilton, Asst. Atty. Gen., Charles F. Hyder, Maricopa County Atty. by Nancy L. Hinchcliffe, Deputy Maricopa County Atty., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James L. Edgar and James Martin, Deputy Public Defenders, Phoenix, for appellant.

OPINION

OGG, Chief Judge.

After a jury trial, the appellant/defendant, Paul Steven Reynolds was found guilty of Count I, Burglary, First Degree; Count II, Rape, First Degree; and Count III, Lewd and Lascivious Acts. The defendant was sentenced to prison terms of one to five years on the burglary, seven to twenty years on the rape, and one to five years on the lewd and lascivious acts charge. The defendant appealed from the judgment and sentences imposed. The state also filed an appeal based upon alleged errors by the trial court in evidentiary rulings and the suppression of certain evidence and confessions. These two separate appeals have been consolidated for disposition. We affirm the judgments and sentences imposed, which renders moot the issues raised in the state appeal.

The defendant raises two issues:

(1) The "fruits" of the illegal arrest were improperly admitted.

(2) The court should have declared a mistrial after a court employee had an improper conversation with three of the jurors during the trial.

## WERE THE "FRUITS" OF THE ILLEGAL ARREST IMPROPERLY ADMITTED?

To develop this first issue, we must set forth the pertinent facts of the case. The prosecution's first witness was the victim, who testified that on the night of July 6, 1977, she was lying in her bedroom watching television when the defendant entered through her partially open arcadia door. She looked up and saw somebody pushing back the door. The person made a flying leap on top of her and immediately started putting a quilt and pillows over her head. He then proceeded to commit the sexual assaults charged against him. During the trial the victim positively identified the defendant as her assailant.

She further testified that after reporting the crime to the police, nothing of significance happened until she was riding in an automobile two days later and observed a man walking in the neighborhood whom she believed to be her assailant. She observed the man enter an apartment with a woman. On July 11, she, in the company of a friend, went to the apartment and observed through a window the defendant seated on the floor watching television. When the defendant saw the victim looking in at him, he became very excited and jumped to his feet. The police were called and they immediately secured the entrances to the apartment and arrested the defendant without a warrant. The defendant was identified at the police station as the rapist. As the defendant was being moved in the police station, the victim inadvertently heard the defendant's voice as he spoke relative to an unrelated matter. She recognized the voice from a definite "Southern twang". The defendant was then photographed and fingerprinted. After extensive questioning, the defendant confessed to the rape as well as to numerous other felonies committed in the neighborhood. After a comparison of his prints, it was determined the defendant's prints matched those found at the scene of the crime.

At a motion to suppress, the trial judge ruled that the warrantless arrest was improper, that the subsequent confessions were tainted, and these together with the fingerprints were inadmissible. The court found the police erred in entering the residence without a warrant when no exigent circumstances existed. The court further denied the defendant's motion to suppress the victim's identification of the defendant, the photographs of the defendant, and the defendant's voice identification made at the police station by the victim. In denying the motion, the court made the following finding:

"The testimony sought to be suppressed relates directly to the question of the defendant's identity. Since the police would have inevitably discovered the defendant's identity and could have conducted the same procedure complained of, the illegal arrest does not taint the evidence. See *State v. Lamb*, 116 Ariz. 134, 568 P.2d 1032 (1977); *United States v. Jackson*, 448 F.2d 963 (9th Cir. 1971)"

The defendant argues that such evidence was clearly the fruit of the illegal entry and arrest and therefore should have been excluded. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The state argues that the victim's independent discovery of the defendant in a neighborhood apartment was not the fruit of some illegal action. We agree. The victim's discovery occurred prior to the time the police apprehended the defendant. The victim was not an agent of the state, and her independent observation and identification of her assailant was properly admitted into evidence. Under the doctrine of inevitable discovery, it was not error for the court to allow into evidence the later identification made by the victim at the police station and the admission of the photographs and voice identification.

In *State v. Lamb,* our Arizona Supreme Court followed the doctrine of inevitable discovery and stated that "evidence obtained as a result of an unlawful search need not be suppressed where, in the normal course of the police investigation and absent the illicit conduct, the evidence would have been discovered anyway." In the case before us, the tainted evidence, absent the illicit conduct, would have been discovered anyway.

## SHOULD A MISTRIAL HAVE BEEN DECLARED WHEN THERE WAS IMPROPER COMMUNICATION WITH JURORS?

■ The defendant contends he was denied due process fairness when a judge's secretary from a justice court division improperly communicated with three jurors during the trial. The incident was reported to the bailiff by one of the jurors, and the court held a hearing in chambers. It appears that while three of the jurors were taking a rest break in the women's lounge, a conversation was initiated by the secretary as to whether the jurors were hearing an interesting case. The conversation was directed to one of the jurors, who testified as follows:

"THE COURT: What did she say?

JUROR: 'Is the case you are on pretty exciting? I suppose if they find him guilty, they would let him go anyway.' I just answered her with a 'Who knows?' "

The jurors did not know the person who made the improper remark or that she was the secretary in a justice court division.

After questioning the three jurors, all indicated to the judge that this conversation would not impair their ability to be fair and impartial. The court denied the motion for mistrial because it was its opinion that the three jurors could put aside the improper remarks and could follow the court's cautionary instructions.

■ At the completion of the trial, the court instructed the jury they were not to consider punishment and that they were to evaluate the case only upon the evidence and exhibits admitted into evidence. Jurors are presumed to do their duty. No one can presume jurors will betray their trust and ignore the court's instructions. *State v. Trujillo,* 120 Ariz. 527, 587 P.2d 246 (1978); *State v. Parker,* 116 Ariz. 3, 567 P.2d 319 (1977); *State v. Hilliard,* 89 Ariz. 129, 359 P.2d 66 (1961).

There is no evidence in this case that the three jurors were not fair and impartial or that they violated their trust. Given the nature of the remarks and the sworn statements of the three jurors that they would disregard them, we affirm the trial judge's actions in this matter.

The judgments and sentences are affirmed.

CONTRERAS, P. J., Department C, and JACOBSON, J., concur.