724 P.2d 545

**STATE of Arizona, Appellee,**

v.

**Gary Michael AULT, Appellant.**

**No. 6539.**

Supreme Court of Arizona,
En Banc.

June 23, 1986.

Supplemental Opinion Sept. 18, 1986.

Robert K. Corbin, Atty. Gen., William Schafer, III, Chief Counsel, Crim. Div., Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Robert J. Roberson, Yuma, for appellant.

GORDON, Vice Chief Justice.

Defendant, Gary Michael Ault, was indicted on January 3, 1985, for the crimes of second degree burglary, A.R.S. § 13–1507, and child molestation, A.R.S. § 13–1410. The state alleged prior convictions for six offenses from the State of California. Defendant was convicted on March 21, 1985, of both counts and sentenced to life imprisonment for child molestation and a concurrent 11.25 year term for burglary. We

have jurisdiction pursuant to Ariz. Const. art. 6 § 5(3) and A.R.S. § 13-4031.

At approximately 2 a.m. on December 27, 1984, a six year old girl was sexually molested while sleeping in her home. The victim woke her parents with screams. Her mother rushed into the bedroom the victim shared with her one year old brother. The victim told her mother that a man had come into her room, unzipped her pajamas and fondled her genitals. Apparently the assailant entered the house through an unlocked door and left when the victim began screaming.

The police arrived at the scene and muddy footprints were found on the interior floors and outside the home. The footprints were unusually large and were in a distinctive "duck walk" pattern. The prints measured approximately 14 inches long and the stride of the person was estimated to be 28 to 36 inches. It had rained that night which accounted for the clarity of the prints.

The victim, who spoke only Spanish, told Deputy Salazar that her assailant wore a cap, Levis and a red shirt. She also said her assailant had a long mustache and was taller than Officer Sproul, who is six feet tall, and was young like Salazar, who was 26 years old. Based on the description and the distinctive footprints, two officers at the scene suspected defendant, who lived approximately a quarter of a mile from the victim's house. The victim was taken to the hospital for an examination. There she was shown a photographic lineup of six men. She picked defendant as the man in her room who molested her.

While the victim was at the hospital, Officer Schmidt went to defendant's home. He knocked on the door and no one answered. Schmidt waited outside for approximately two hours until a porch light came on around 5 a.m. Schmidt again knocked on the door and Charles Robertson, defendant's roommate, told Schmidt that defendant was not present and authorized a search of the apartment for verification. Shortly after Schmidt left defendant returned home. At approximately 6:45 a.m.

Deputies Salazar and Kehl went to defendant's home. Defendant came to the door wearing just a pair of shorts or a towel. Defendant was advised by Salazar that he was investigating a trespass incident and requested that defendant accompany the deputies to the police station for questioning.

Defendant initially refused to go to the station indicating that he had to go to work. Salazar told defendant that if he did not cooperate he would be arrested. At that point defendant agreed to cooperate, turned from the door and headed back toward the bedroom to put on some clothes. The two deputies followed defendant inside without seeking permission to enter. Defendant told the deputies twice that they were not invited into the premises, but Salazar stated that the deputies were present for their own protection.

While inside, Salazar saw a pair of large, muddy tennis shoes on an oven door. He seized them and asked defendant if the shoes belonged to him. Defendant replied negatively. Nevertheless, Salazar brought the shoes back to the police station where defendant was formally arrested. Salazar testified that defendant was not under arrest at his home. However, he stated that regardless of whether defendant cooperated, it was Salazar's intention to ultimately place defendant under arrest.

A search warrant was served upon defendant's apartment at approximately 3 p.m. on December 27, 1984. The warrant authorized a search for the clothing defendant had worn the previous morning and for shoes owned by him. Deputies found a pile of damp clothes in defendant's bedroom which included a pink sport shirt, blue jeans, a blue cap and a blue jacket. Both Robertson and defendant testified that the clothes seized were worn by defendant on the night of December 26, 1984.

Defendant raises the following issues:

1. Did the trial court commit reversible error by permitting the tennis shoes seized by Deputy Salazar to be introduced at trial?

2. Did the trial court err by not suppressing the evidence seized pursuant to the search warrant?

3. Did the trial court err in not suppressing references to the photographic lineup?

4. Did the trial court abuse its discretion by allowing the six year old victim to testify?

## I.

Defendant argues that the tennis shoes seized by Deputy Salazar prior to his arrest should have been suppressed at trial. This is so, he asserts, because Salazar did not have permission to enter the apartment, he was not under arrest, no exigent circumstances existed and no search warrant had been issued. The state, conversely, argues that Salazar's entrance was supported by exigent circumstances because of an alleged danger that defendant might reach for a weapon inside the apartment or try to escape. Alternatively, the state claims the shoes were properly seized under the inevitable discovery doctrine since they would have been seized pursuant to a search warrant executed later in the day.

■ It is clear that the Fourth Amendment to the United States Constitution and art. 2 § 8 of the Arizona Constitution[1] proscribe unreasonable search and seizure by the state. Unlawful entry of homes was the chief evil which the Fourth Amendment was designed to prevent. *Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984); *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). The Arizona Constitution is even more explicit than its federal counterpart in safeguarding the fundamental liberty of Arizona citizens. *State v. Martin,* 139 Ariz. 466, 473, 679 P.2d 489, 496 (1984). As a matter of Arizona law, officers may not make a warrantless entry into a home in the absence of exigent circumstances or other necessity. *State v.*

*Bolt,* 142 Ariz. 260, 265, 689 P.2d 519, 524 (1984); *State v. Martin,* 139 Ariz. at 474, 679 P.2d at 497.

■ At the time Deputies Salazar and Kehl went to defendant's apartment they were aware of the footprint evidence, defendant's distinctive walk, the description given by the victim, the result of the photographic lineup and defendant's prior criminal background. We believe there was probable cause to arrest defendant based on this information. However, the deputies chose not to legally arrest defendant at his home but requested that he accompany them to the police station. The exigent circumstances alleged on behalf of the state were created by the arresting deputies. An arrest warrant could have been obtained and defendant apprehended at his home. This was not done.

The recognized exceptions to the warrant requirement, aside from consent, which can be considered exigent are 1) response to an emergency, 2) hot pursuit, 3) probability of destruction of evidence, and 4) the possibility of violence. *See State v. Cook,* 115 Ariz. 188, 193, 564 P.2d 877, 882 (1977); Note, *Exigent Circumstances for Warrantless Home Arrests,* 23 Ariz.L.Rev. 1171 (1981). In the present case the deputies were not responding to an emergency and fear of escape was virtually nonexistent. The deputies were positioned at the only operable door to the apartment and defendant had just volunteered to accompany the deputies to the station. There clearly was no hot pursuit or grave risk of violence articulated by the state which would allow warrantless entry.

■ While we believe the safety of law enforcement personnel is of utmost importance, we cannot allow the creation of exigent circumstances in order to circumvent the warrant requirement. The mere incantation of the phrase "exigent circumstances" will not validate a warrantless search of one's home. *State v. Martin,*

1. No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

139 Ariz. at 474, 679 P.2d at 497. Since the deputies were not lawfully inside defendant's apartment, the tennis shoes could not lawfully be seized under the guise of "plain view". Prior to seizure of evidence under the "plain view" exception to the warrant requirement, the officer must 1) have prior justification to be in a position to view the evidence; 2) the discovery must be inadvertent, and 3) its evidentiary value must be immediately apparent. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Cook,* 115 Ariz. at 194, 564 P.2d at 883.

■ We also believe that, in spite of the warrantless entry into defendant's home, he was also illegally arrested inside his home. This court has had occasion to recently discuss when a person is under arrest. *See State v. Winegar,* 147 Ariz. 440, 711 P.2d 579 (1985); *State v. Leslie,* 147 Ariz. 38, 708 P.2d 719 (1985). Both cases stated, "an arrest is complete when the suspect's liberty of movement is interrupted and restricted by the police," 147 Ariz. at 447–48, 711 P.2d at 586–87; 147 Ariz. at 43, 708 P.2d at 724. Whether the defendant has been arrested is to be tested by the objective evidence and not by the subjective belief of the parties. *Id.; see also State v. Green,* 111 Ariz. 444, 532 P.2d 506 (1975). It is clear that the subjective intent of the officer is not controlling on the issue of whether an arrest occurred; rather, the issue rests upon an evaluation of all the surrounding circumstances to determine whether a reasonable man innocent of any crime would have thought he was being arrested if he had been in defendant's shoes. *State v. Waicelunas,* 138 Ariz. 16, 672 P.2d 968 (App.1983); *United States v. Beck,* 598 F.2d 497 (9th Cir.1979). Indeed, "[a] certain set of facts may constitute an arrest whether or not the officer intended to make an arrest and despite his disclaimer that an arrest occurred." *State v. Winegar,* 147 Ariz. at 448, 711 P.2d at 587, *quoting Taylor v. Arizona,* 471 F.2d 848, 851 (9th Cir.1972).

■ When deciding if an arrest did, in fact, occur a significant consideration is the extent that freedom of movement is curtailed and the degree and manner of force used. *State v. Waicelunas, supra; United States v. Beck, supra.* Another significant factor is the display of official authority, such that "a reasonable person would have believed he was not free to leave." *State v. Winegar,* 147 Ariz. at 448, 711 P.2d at 587, *quoting Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983).

■ Deputy Salazar testified that defendant was not under arrest at his home. When questioned as to why defendant was not arrested at his home, Salazar replied that he wanted to get as much cooperation as possible out of defendant prior to arrest. However, Salazar further stated it was his intention to place defendant under arrest regardless of whether defendant cooperated. At the scene defendant's freedom of movement was certainly curtailed and his liberty restricted, but no force was used. The two deputies told defendant he would be arrested if he did not go voluntarily to the station. No reasonable person would have believed that he was free to leave the scene at this point. All of the activity occurred inside defendant's home so that the rule which allows warrantless arrest of individuals in public has absolutely no application. We believe defendant was unlawfully under arrest at his home and therefore no legitimate argument can be made that the shoes were seized in plain view or as a search incident to arrest.

■ Since we have found no prior justification for the deputies to be inside defendant's home, the state has failed the initial requirement of the "plain view" exception to the warrant requirement. The burden is on the state when it seeks an exception to the warrant requirement, *State v. Fisher,* 141 Ariz. 227, 686 P.2d 750 (1984), and it has failed to sustain its burden regarding the initial seizure of defendant's tennis shoes.

■ The state argues that regardless of the legality of the initial seizure of the tennis shoes the inevitable discovery doc-

trine allowed the shoes to be introduced at trial. The exclusionary rule suppresses or excludes the introduction at trial of illegally obtained evidence and an exception to the rule is termed the inevitable discovery doctrine. If the prosecution can establish by a preponderance of the evidence that the illegally seized items or information would have inevitably been seized by lawful means, the United States Supreme Court has held that the deterrence rationale of the exclusionary rule has so little basis that the evidence should be received. *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). We recognize the inevitable discovery doctrine in Arizona, *State v. Castaneda,* 150 Ariz. 382, 724 P.2d 1 (1986); *State v. Hein,* 138 Ariz. 360, 674 P.2d 1358 (1983); *State v. Lamb,* 116 Ariz. 134, 568 P.2d 1032 (1977), but will allow its use only in appropriate circumstances. We decline to allow its use today.

In *Nix v. Williams, supra,* the body of a murdered child was deemed admissible because its discovery was found to be inevitable in spite of the fact that the location of the body was obtained in violation of the defendant's constitutional rights. However, the U.S. Supreme Court had previously declared that the defendant's incriminating statements were the product of an unlawful interrogation and were erroneously admitted into evidence at trial. *See Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *State v. Williams,* 285 N.W.2d 248 (Iowa 1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980). In *State v. Lamb, supra,* this Court first recognized the inevitable discovery doctrine and stated:

"... evidence obtained as a result of an unlawful search need not be suppressed where, in the normal course of the police investigation and absent illicit conduct, the evidence would have been discovered anyway." 116 Ariz. at 138, 568 P.2d at 1036.

The search in *State v. Lamb, supra,* occurred in a hotel. The defendant argued that drugs, currency and a gun should have been suppressed due to an illegal pat-down search. The illegality of the search was conceded, but this Court allowed derivative evidence to be used at trial since it came to light independent of the illegal search and in the normal course of the investigation. In *State v. Hein, supra,* the defendant's rights were violated when custodial interrogation was conducted prior to the giving of *Miranda* warnings. We held the question asked by the arresting officer and defendant's incriminating response could not properly be admitted at trial. We held, however, that a gun and ammunition found in defendant's car were admissible based on the inevitable discovery doctrine. Most recently in *State v. Castaneda, supra,* the police made allegedly coercive threats to the defendant. In response the defendant told authorities where the body of his victim was located. We held that while the police statements may have amounted to coercion, the failure to suppress the defendant's response was harmless. However, the body would have inevitably been discovered under the facts of the case and was therefore admissible.

■ The court of appeals in *State v. Reynolds,* 125 Ariz. 530, 611 P.2d 117 (App. 1980), had occasion to rule on a factual situation similar to the one presently before us. The court allowed photographs, voice print evidence and the victim's identification of her assailant to be admitted at trial. However, the defendant's confession and fingerprints were properly excluded due to a warrantless arrest at defendant's home absent exigent circumstances. We view the seizure of defendant's tennis shoes in this case as analogous to the seizure and suppression of the fingerprint evidence in *State v. Reynolds, supra.* The seizure of the fingerprints and the confession were the primary result of an illegal arrest in one's home. The illegal search of defendant's home directly produced his tennis shoes. We choose not to allow the inevitable discovery doctrine to reach into homes of citizens in the factual situation before us.

We decide this case on independent state grounds. The dissent cites a number of cases which it believes hold that direct evidence is admissible under the inevitable discovery doctrine. We disagree with their interpretation of those cases and find them unpersuasive especially since our decision is based on the Arizona Constitution. We also believe that the Supreme Court would require suppression of this evidence under the fourth amendment. "[A]bsent exigent circumstances the entry [into the apartment] ... constituted an illegal *search*, or interference with [defendant's] privacy interests, requiring suppression of all evidence obtained during the entry." *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 3389, 82 L.Ed.2d 599 (1984) (emphasis in original). The Court upheld the securing of the apartment and the admission of evidence *not* in plain view, which occurred while the police were in the process of obtaining a warrant. However, the Court stated that "officers who enter illegally will recognize that whatever evidence they discover as a *direct* result of the entry may be suppressed." *Id.* at 812, 104 S.Ct. at 3390 (emphasis added).

Our decision not to extend the inevitable discovery doctrine into defendant's home in this case is based on a violation of art. 2 § 8 of the Arizona Constitution regardless of the position the United States Supreme Court would take on this issue. While our constitutional provisions were generally intended to incorporate federal protections, *State v. Bolt*, 142 Ariz. at 264, 689 P.2d at 523, they are specific in preserving the sanctity of homes and in creating a right of privacy. *Id.* at 265, 689 P.2d at 524. This holding regarding the inevitable discovery doctrine is based upon our own cases and constitution and thereby complies with the United States Supreme Court dictates of holdings based on independent state grounds. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

■ We strongly adhere to the policy that unlawful entry into homes and seizure of evidence cannot be tolerated. The exceptions to the warrant requirement are narrow and we choose not to expand them. No exigent circumstances existed to allow a warrantless entry into defendant's home. The police could have easily obtained an arrest warrant which would have allowed defendant to be arrested in his home. The tennis shoes could then have been seized under the plain view exception or as a search incident to arrest. This is not a case of harmless error. The police officers had defendant in custody and had seized his shoes prior to obtaining and executing the search warrant on his home. We believe the evidence seized pursuant to the search warrant was properly admitted at trial, *State v. Martin, supra,* and further hold that the tennis shoes seized should have been suppressed as primary evidence obtained as a direct result of police misconduct. Because we must reverse we will consider those questions likely to be raised again on retrial, keeping in mind that different evidence presented on retrial may mandate different results.

## II.

Defendant challenges the sufficiency of the affidavit used to support the search warrant of his residence because it did not characterize the place to be searched as his residence and it did not sufficiently state why the affiant believed that the clothes worn by defendant previously would be at the residence. We disagree.

The description in a search warrant must be of sufficient particularity to enable a searching officer to ascertain the place to be searched, *Mehrens v. State*, 138 Ariz. 458, 675 P.2d 718 (App.1984), *cert. denied*, 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984), and property to be seized. *State v. Robinson*, 139 Ariz. 240, 677 P.2d 1348 (App.1984). The items to be seized must be defined with sufficient particularity so that the executing officer is not confused as to the scope of the permissible search. *Id.*

■ Search warrants are presumed to be correct and should not be invalidated by a hypertechnical interpretation when a magistrate had probable cause to issue the

warrant. *State ex rel. Collins v. Superior Court,* 129 Ariz. 156, 629 P.2d 992 (1981). Doubtful or marginal affidavits should be considered in light of the preference of validity accorded search warrants. *Id.* Affidavits in support of search warrants should be interpreted in a commonsensical and realistic fashion. *Id.*

█ The affidavit in support of the search warrant in the present case defined the place to be searched as "3351 W. Columbia, in the County of Yuma." The items to be seized were defined as "clothing worn by Gary Ault on morning of December 27, 1984 and shoes owned by Gary Ault." The "Regular Information Form" notes attached to the affidavit establish that probable cause existed to search defendant's apartment. The notes briefly stated the facts of the molestation and burglary and particularly indicated that the victim had described the suspect and his clothing and that the victim had picked defendant out of a photo lineup.

We believe the magistrate had probable cause to issue the search warrant and that he could rationally determine from the affidavit that the place to be searched was defendant's residence in which the described clothing would be found. The clothing and shoes to be seized were described with sufficient particularity so as to limit the scope of the search. *See State v. Rodriquez,* 145 Ariz. 157, 169, 700 P.2d 855, 867 (App.1984).

### III.

█ Defendant argues that the photographic lineup was unduly suggestive. We disagree. The victim viewed six photographs in a clear plastic exhibit. Four photos were on one side and two photos were on the reverse side. Defendant's photo was on the bottom right on the front side. Each subject has a mustache and fairly long hair. Defendant claims his photo is the only one not taken from a full, frontal position, but at an upward angle. Assuming this claim to be true, we do not believe this was a suggestive lineup. A photographic lineup is not unduly sugges-

tive due to subtle differences in the photographs. *State v. Via,* 146 Ariz. 108, 119, 704 P.2d 238, 249 (1985); *State v. Perea,* 142 Ariz. 352, 356, 690 P.2d 71, 75 (1984).

The victim was shown the photographs shortly after she observed defendant in her room. There was a night light on next to her bed which enhances the reliability of the identification. The procedure used at the hospital was not suggestive. Deputy Rhodes and the victim's mother who were present at the hospital testified that the victim was first shown the two photos on the back of the exhibit and then she was shown the front four photos. She pointed only to defendant's photo. Deputy Salazar, who conducted the lineup, testified that he asked the victim to look carefully at the photos and showed her both sides of the exhibit. Salazar stated the victim looked at her mother and him prior to selecting a photo. Salazar pointed to the pictures one at a time, stopping at each and asking the victim if this was the man who touched her. She only stated "yes" for defendant's photo. Although there are slight discrepancies as to the precise procedures employed, neither of the described procedures is unduly suggestive. Based on the totality of the circumstances the victim's identification of defendant was reliable. *See Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972); *State v. Perea, supra.*

█ We do not believe it is significant that the victim could not identify defendant at trial. Her identification of defendant at the photographic lineup was admissible per A.R.S. § 13–1416. As previously mentioned, the victim was six years old and defendant had shaved his mustache for trial. We also find no error in witness testimony by those present at the hospital for the photographic lineup. It was proper for these witnesses to testify that the victim did pick defendant as the man in her room.

### IV.

Defendant claims that the victim was not competent to testify and that the trial court

abused its discretion on this issue. We disagree. A.R.S. § 12–2202 states, in part: "The following shall not be witnesses in a civil action:

. . . .

2) Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are to testify, or of relating them truly."

 The above statute is applicable to criminal actions. A.R.S. § 13–4061; *State v. Schossow*, 145 Ariz. 504, 703 P.2d 448 (1985). The presumption that children under the age of ten are incompetent to testify can be rebutted by a showing of competency sufficient to allow the trial judge to make a finding on the issue. *Id.* We believe the state sustained its burden and overcame the presumption of incompetency.

A pretrial hearing was held on January 29, 1985. The victim testified at the hearing with the aid of an official interpreter. She was examined by the prosecuting attorney and cross-examined by defense counsel. Thereafter the trial court ruled that the victim was competent to testify. The trial judge found that the examination of the victim demonstrated that she knew what is a lie and what is not and that although she could not define what is truth and what is a lie, her responses to questions demonstrated an awareness of the difference. *See State v. Pittman*, 118 Ariz. 71, 574 P.2d 1290 (1978) ("proof that an eight year old child is incapable of formulating an abstract definition of truth aids us very little in determining whether that child has an intuitive grasp of the difference between truth and falsehood"). We have recently stated that we will rely upon the experience and discretion of the trial judge to evaluate these young witnesses and determine their competency. *State v. Schossow*, 145 Ariz. at 507, 703 P.2d at 451. We find no abuse of discretion after a review of the record.

Reversed and remanded.

HAYS and FELDMAN, JJ., concur.

CAMERON, Justice, dissenting.

I respectfully dissent. The majority writes "[w]e choose not to allow the inevitable discovery doctrine to reach into homes...." I, however, can find no explanation why the policy reasons in support of the inevitable discovery doctrine should magically disappear at the door of "King Gary's Castle".

As stated by the majority, the inevitable discovery doctrine allows the admission of illegally obtained physical evidence when the prosecution can show by a preponderance of the evidence that it would inevitably have been obtained by lawful means. *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). Exclusion of this evidence adds nothing to either the integrity or fairness of a criminal trial. *Id.* at 445, 104 S.Ct. at 2510.

In the instant case, the muddy tennis shoes illegally seized by Deputy Salazar would have been discovered and lawfully obtained later pursuant to a valid search warrant. The defendant could not have removed the shoes prior to the execution of the warrant since he was taken to the police station and arrested that morning. The defendant's roommate, Robertson, could not have removed the shoes since he was at work until summoned home to allow deputies to enter the house and execute the search warrant. Therefore, the shoes inevitably would have been found when the warrant was executed.

Further, the search warrant itself was issued on independent grounds not tainted by the illegally seized shoes. The affidavit was based on specific facts not related to the illegal search. Additionally, it is clear that after defendant's arrest, a search warrant would have been obtained as a normal aspect of a police investigation. *See State v. Butler*, 676 S.W.2d 809, 813 (Mo.1984). The fact that the search warrant was not obtained until after the illegal search is not fatal, as the police did have the probable cause necessary to obtain a warrant prior to the illegal search. *United States v.*

*Silvestri*, 787 F.2d 736, 746 (1st Cir.1986); *see also United States v. Merriweather*, 777 F.2d 503 (9th Cir.1985).

The majority bases its reasoning on the fact that the warrantless search occurred in a home. This fact somehow bars application of the inevitable discovery doctrine. In reality, no such barrier exists. *See State v. Butler, supra* (bedclothes with bullet hole held admissible under inevitable discovery doctrine despite warrantless search of bedroom, even where warrant was not subsequently issued); *State v. Holler*, 123 N.H. 195, 459 A.2d 1143 (1983) (discovery of gun during warrantless search in house. Gun was admissible under inevitable discovery since the illegal search did not result "in any benefit to police that would not have been obtained in the subsequent legal search."). Where, as here, "the government can prove that the evidence would have been obtained inevitably ... regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings. In that situation, the State has gained no advantage at trial and the defendant has suffered no prejudice." *Nix v. Williams*, 467 U.S. at 447, 104 S.Ct. at 2511.

Finally, I feel the majority has misread *State v. Reynolds*, 125 Ariz. 530, 611 P.2d 117 (App.1980). The majority states, "We view the seizure of defendant's tennis shoes in this case as analogous to the seizure and suppression of the fingerprint evidence in *State v. Reynolds, supra.*" The fingerprints suppressed in *Reynolds*, as I read the case, were those found at the scene of the crime and had nothing to do with the illegal arrest of Reynolds in his apartment. *State v. Reynolds*, 125 Ariz. at 531, 611 P.2d at 118. In fact, the photographs taken of Reynolds during booking and the identification of his voice by the victim, both of which were results of his illegal arrest, were held admissible under the doctrine of inevitable discovery. *Id.*

HOLOHAN, C.J., concurs.

## SUPPLEMENTAL OPINION

GORDON, Vice Chief Justice.

In *State v. Ault*, 150 Ariz. 459, 724 P.2d 545 (1986), we reversed appellant's convictions for second degree burglary, A.R.S. § 13–1507, and child molestation, A.R.S. § 13–1410. Pursuant to Rule 31.18, 17 A.R.S., Rules of Crim.Proc., appellee filed a motion for reconsideration with this court. We affirm our earlier reversal of appellant's convictions but issue this supplemental opinion to clarify our reasons for doing so.

### I.

A central issue in this case is whether a certain pair of tennis shoes could be introduced into evidence at trial under the inevitable discovery doctrine. The shoes were seized during an unlawful arrest of appellant at his home at approximately 7:00 a.m. on December 27, 1984. A search warrant was issued at approximately 3:00 p.m. that same day which permitted police officers to return to appelllant's home and find clothing worn by the appellant while committing his alleged criminal conduct. The state claimed that the shoes were properly seized under the inevitable discovery doctrine because they would have been seized during the legal search conducted approximately eight hours after their illegal seizure.

We are unpersuaded that the shoes would have been inevitably discovered during the legal afternoon search. Appellant's roommate had plenty of time between the unlawful arrest and the lawful search during which he could have hidden, removed, or destroyed the shoes. The fact that the roommate did not tamper with clothing which he knew appellant had worn during his alleged criminal activities suggest that the shoes may have remained untouched by him. This is reasoning in retrospect, however. The mere fact that appellant's roommate had easy access to the shoes during the day precludes us from concluding that the shoes would have been *inevitably* discovered during the legal afternoon search.

## II.

In our earlier opinion we wrote:

The illegal search of defendant's home directly produced his tennis shoes. We choose not to allow the inevitable discovery doctrine to reach into homes of citizens in the factual situation before us.

\* \* \* \* \* \*

[We] further hold that the tennis shoes seized should have been suppressed as primary evidence obtained as a direct result of police misconduct.

Ante at 465–66, 724 P.2d at 551–52. We reiterate today, although rephrased, what we meant to say in the above statements. The inevitable discovery doctrine cannot be used to introduce evidence directly and primarily obtained in a search or seizure of a home that violates Ariz. Const. art. 2, § 8.[1] Thus, even if the shoes would have been inevitably discovered, we would bar their introduction into evidence because the policemen's original discovery of the shoes was a direct and primary result of a violation of Ariz. Const. art. 2, § 8.

## III.

We acknowledge that we cited *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), for an incorrect proposition and note that *Segura* was decided solely in terms of the independent source doctrine rather than the inevitable discovery doctrine. *See* ante at 465–66, 724 P.2d at 551–52. In all other respects, the reasoning and judgment of our earlier opinion remain unchanged.

HAYS and FELDMAN, JJ., concur.

---

1. However, our holding does not preclude use of the inevitable discovery rule to introduce evidence directly or primarily obtained illegally in other contexts. *See, e.g., State v. Castaneda,* 150 Ariz. 382, 724 P.2d 1 (1986) (defendant revealed location of victim's body as result of policemen's coercive threats); *State v. Hein,* 138 Ariz. 360, 674 P.2d 1358 (1983) (*Miranda* violation); *State v. Lamb,* 116 Ariz. 134, 568 P.2d 1032 (1977) (illegal search at hotel); *State v. Reynolds,* 125 Ariz. 530, 611 P.2d 117 (App.1980)

(direct evidence suppressed; independent evidence properly admitted).

Nor by our holding do we express any opinion on whether the plain view doctrine or independent source doctrine can be invoked to introduce evidence directly and primarily obtained in a search or seizure of a home that violates Ariz. Const. art. 2, § 8. We need not address those issues today because neither exception to the exclusionary rule can be successfully applied to the facts of this case.