NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee,*

*v.*

CRAIG TANNER HARRINGTON,
*Appellant.*

No. 1 CA-CR 14-0846
FILED 1-28-2016

Appeal from the Superior Court in La Paz County
No. S1500CR201200204
The Honorable Jerry G. Landau, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By William Scott Simon
*Counsel for Appellee*

David Goldberg, Ft. Collins, Colorado
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge Samuel A. Thumma joined.

**S W A N N**, Judge:

¶1        Craig Tanner Harrington appeals his convictions and sentences for two counts of misconduct involving weapons, one count of possession of drug paraphernalia, one count of possession of marijuana, and one count of misdemeanor theft.  He argues that the trial court erred in denying his motion to suppress evidence police seized from his home because the warrant authorizing the search was not supported by probable cause.  He also contends that the court committed fundamental error in admitting other acts evidence.  We conclude that the warrant was supported by probable cause and that the court properly denied Harrington's motion to suppress.  We also conclude that the court did not fundamentally err in admitting other acts evidence.  We therefore affirm Harrington's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2        In rural Bouse, Arizona, Deputy Nelson stopped Harrington while he was driving a vehicle with no license plate.  Based on previous contacts with Harrington, Nelson knew Harrington's license was suspended and arrested him.  Believing that Harrington was violent and a flight risk, Nelson handcuffed him, patted him down, and found two small baggies containing marijuana in his pants pocket.  From the inventory search of the vehicle, Nelson discovered various items associated with firearms, including a spent casing, a rifle round, a holster, and a rifle scope.  Because Nelson knew that Harrington was a convicted felon prohibited from lawfully possessing firearms, he drafted an affidavit for a search warrant to search Harrington's residence for guns.  A Justice of the Peace issued the warrant.

¶3        Nelson and other officers, including Sergeant Epps, served the warrant and discovered in Harrington's home a motorcycle chassis that had been reported stolen, .38 caliber ammunition, 12-gauge shotgun shells, a BB gun, and two pipes, one of which contained methamphetamine residue.  The officers also observed a video surveillance system, a police scanner, walkie-talkies, a motorcycle, and a detached motorcycle fender

together with other vehicle parts.  In a shed adjacent to the home, Nelson discovered a .38 caliber revolver and a 12-gauge shotgun.

**¶4**         The state charged Harrington with two counts of misconduct involving weapons, a Class 4 felony, and one count each of: possession of drug paraphernalia; possession of marijuana; and theft, all Class 6 felonies.[1] Before trial, Harrington moved to suppress the evidence discovered at his home, arguing that the search warrant was not supported by probable cause.  After holding an evidentiary hearing on the motion, the court denied it.

**¶5**         The jury convicted Harrington on all charges, and the court imposed concurrent terms of imprisonment.  Harrington timely appeals.

## DISCUSSION

I.    THE TRIAL COURT PROPERLY DENIED DEFENDANT'S MOTION TO SUPPRESS.

**¶6**         Harrington contends the search warrant should not have issued because it was not properly supported by probable cause. Specifically, he argues the affidavit was devoid of information linking him to the address of the home searched.  Harrington also contends that items found in his car when he was arrested were lawful to possess, and therefore did not support a reasonable belief that he or his home were connected to illegal activity.  As a result, Harrington asserts the search of his residence violated his Fourth Amendment rights, and the evidence discovered pursuant to the search was inadmissible.  We review de novo a trial court's determination as to whether probable cause supports a search warrant affidavit.  *State v. Buccini*, 167 Ariz. 550, 555 (1991).

**¶7**         The Fourth Amendment to the United States Constitution requires a showing of probable cause before a search warrant may issue. U.S. Const. amend. IV; *see also* A.R.S. § 13-3913 ("No search warrant shall be issued except on probable cause, supported by affidavit . . . .").  A magistrate must find probable cause to issue the warrant, and the facts and supporting information must be presented to the magistrate under oath. A.R.S. §§ 13-3913, -3914.

---

[1]       The state also charged Harrington with a third count of misconduct involving weapons and one count of possession of dangerous drugs but dismissed these charges before trial.  Additionally, the state amended the theft count to allege only a misdemeanor.

¶8        To determine whether probable cause exists, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In other words, if, after considering all the information in an affidavit, a magistrate reasonably believes a crime was committed and evidence of that crime can be found in a specified location, the magistrate may issue a search warrant for that location.  It is the trial court's duty "to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id*. at 238-39 (alterations in original) (citation omitted).  In doing so, the trial court must presume the search warrant was valid and require the defendant to prove its invalidity. *See State v. Crowley*, 202 Ariz. 80, 83, ¶ 7 (App. 2002); *see also State v. Ault*, 150 Ariz. 459, 467 (1986) ("Doubtful or marginal affidavits should be considered in light of the preference of validity accorded search warrants.") (citation omitted).

¶9        With these principles in mind, we conclude the search warrant was supported by probable cause, and Harrington did not satisfy his burden to prove otherwise.  In Deputy Nelson's application for the warrant, he avowed that he observed the vehicle Harrington was driving at the time of the arrest "in Harrington's possession (and parked at the [address of the residence to be searched])" over the course of the past four months.  Indeed, Nelson not only stated in the affidavit that the vehicle was owned by "Steven Harrington," but he also avowed that he had observed the vehicle parked at the home approximately 15 minutes before he stopped Harrington.[2]  Nelson further avowed that, during his post-arrest inventory search of the vehicle, he discovered ammunition, a holster, and a rifle scope.  Finally, Nelson avowed that he had personal knowledge of Harrington's prohibited-possessor status.  In sum, Harrington, a known prohibited possessor, was stopped while driving a vehicle not exhibiting a license plate, at a time when his driver's license was known to be suspended. At the time of the stop, multiple indicia of gun possession were found within the vehicle, and the vehicle was observed parked outside what was believed to be Harrington's residence within fifteen minutes of Deputy Nelson's stop and for four months before the stop.

---

[2]        The evidence at trial established that Steven, Harrington's cousin, had sold the vehicle to Harrington three or four weeks before the traffic stop.

¶10          These facts support a reasonable belief that Harrington unlawfully possessed firearms at his residence.  Based on the vehicle's presence at the home for four months, one could reasonably infer he resided there or at least had access to the property.[3]  Further, the abstract lawfulness of the items discovered in the vehicle is inconsequential; ammunition, a holster, and a rifle scope are clearly associated with firearms, which Harrington was forbidden to possess.  Because no weapons were found in the vehicle, common sense dictated that the firearms related to the items found in the car were likely at Harrington's home where he had been observed with the vehicle, 15 minutes before the traffic stop.  Accordingly, considering Nelson's affidavit—as we must—"in light of the preference of validity accorded search warrants[,]"probable cause supported issuing a search warrant for the house to find the weapons Harrington was forbidden by law to possess.  *See Ault*, 150 Ariz. at 467.  The trial court properly denied the motion to suppress.

II.      THE ADMISSION OF OTHER ACTS EVIDENCE WAS NOT
         FUNDAMENTAL ERROR.

¶11          Harrington argues that the court committed fundamental error when it allowed other acts evidence in violation of Ariz. R. Evid. 404(b).   Specifically, Harrington points to Nelson's testimony that Harrington's violent character and potential flight risk were the reasons Nelson handcuffed Harrington during the traffic stop.  Harrington also asserts fundamental error occurred when the court allowed Nelson to testify that the police scanner found at Harrington's residence would be helpful in the rural community to monitor law enforcement activity "and to avoid us." Harrington further challenges Deputy Epps' affirmative response to the prosecutor's question whether walkie-talkies and video surveillance systems are commonly found in "drug houses."   (Epps answered, "I've seen it many times" and explained the use for such items is "[t]o alert people in the area that [] law enforcement is approaching.") Finally, Harrington contends it was fundamental error to allow Epps to testify that the motorcycle and motorcycle parts found inside the residence were consistent with the home being used as a "chop shop" operation.

¶12          Because Harrington did not object to the foregoing testimony, we review only for fundamental error.  *State v. Karr*, 221 Ariz. 319, 321, ¶ 10 (App. 2008).  Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, an

---

[3]      Nelson testified at the suppression hearing that he knew Harrington lived at the address of the home that was searched.

error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (citation omitted). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* at ¶ 20. Prejudice must be apparent from the record and may not be based on speculation. *State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006).

¶13 Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character or "to show action in conformity therewith." Such evidence may be admissible, however, when offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). "The list of 'other purposes' in Rule 404(b) . . . is not exclusive; if evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible even though it refers to his prior bad acts." *State v. Jeffers*, 135 Ariz. 404, 417 (1983).

¶14 Here, Nelson's testimony concerned his reasoning for handcuffing Harrington. The officer testified regarding Harrington's known violence and reputation as a flight risk. The officer's response did not suggest evidence of any specific crime, wrong, or acts by Harrington. The testimony was not, as Harrington implies, evidence of other offenses committed by Harrington. *Cf. State v. Thomas*, 71 Ariz. 423, 425 (1951) (admission "of evidence as to other unrelated, independent offenses" is reversible error). Nonetheless, Harrington contends the testimony was improperly admitted because it showed him to be a "bad person."

¶15 We need not determine whether error occurred on this basis because any theoretical error in admitting the testimony did not rise to the level of fundamental error.[4] Harrington defended the weapons and theft

---

[4] To the extent Harrington challenges the testimony's relevance, we agree that it was not relevant for determining his guilt as to the charged offenses. Although the State argues the testimony illustrated Nelson's rationale for placing Harrington in handcuffs, and was therefore admissible under Rule 404(b) to prove something besides Harrington's character and propensity, Nelson's perception of Harrington as a known violent person who posed a flight risk was simply not material to determining whether Harrington unlawfully possessed the firearms and a stolen motorcycle part. However, for the same reasons that we conclude fundamental error did not

charges on the basis that he did not know about the presence of the firearms and stolen motorcycle chassis, all of which he argued could have belonged to someone else. Nelson's testimony therefore did not go to the "foundation" of Harrington's case. Similarly, Harrington cannot meet his burden of establishing that prejudice resulted from Nelson's brief, isolated testimony. The State did not rely on Harrington's violent nature or his being a known flight risk. We find no prejudice and therefore no fundamental error.

¶16　　　　The testimony regarding the police scanner, walkie-talkies and motorcycle parts as commonly found in drug houses or chop shops simply was not other acts evidence under Rule 404(b). This testimony did not refer to any specific crime, wrong, or acts committed by Harrington, and was not improper propensity evidence of his character. Indeed, regarding the surveillance system, the State argued in closing that "we're not saying that if you have a surveillance system, you're a criminal, but we're saying when things start adding up, then it becomes a concern." Further, if the testimony had pertained to other acts character evidence, it was nonetheless admissible under Rule 404(b) for a non-propensity purpose because the challenged testimony served to rebut Harrington's defense that he was unaware firearms were in the residence and that the motorcycle frame was stolen.[5] No error, much less fundamental error, occurred.

---

occur in admitting the testimony under Rule 404(b), fundamental error also did not result from the testimony's irrelevance.

[5]　　　Harrington admitted to possession of marijuana and drug paraphernalia.

**CONCLUSION**

¶17        For the foregoing reasons, we affirm Harrington's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama