55 P.3d 784

**STATE of Arizona, Appellant,**

v.

**Jose Alberto Aldana JUAREZ and Felipe Jesus Gomes–Pena, Appellees.**

**No. 1 CA–CR 01–1091.**

Court of Appeals of Arizona, Division 1, Department E.

Oct. 1, 2002.

As Corrected Oct. 25, 2002.

William J. Ekstrom Jr., Mohave County Attorney By Gregory A. McPhillips, Deputy County Attorney, Kingman, Attorneys for Appellant.

Jill L. Evans, Flagstaff, Attorney for Appellees.

* Due to a vacancy on this court at the time this case was decided, the Honorable MICHAEL J. BROWN, a retired judge of the Superior Court of Arizona in Pima County, was designated to participate in this case under article VI, § 3 of the Arizona Constitution.

## OPINION

HALL, Judge.

¶ 1 After concluding that defendants Jose Alberto Aldana–Juarez[1] and Felipe Jesus Gomes–Pena had "automatic standing" under the Arizona Constitution to contest the admissibility of cocaine seized as a result of the search of a commercial vehicle and trailer, the trial court granted defendants' motions to suppress because it found that the search exceeded the scope of the consent given and was conducted without probable cause. The state appeals only from the trial court's ruling that each defendant was entitled to contest the constitutionality of the search and seizure despite its conclusion that neither defendant had a legitimate expectation of privacy in the area searched. We have jurisdiction to consider the appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (1992), 13–4031 (2001), and 13–4032(6) (2001). We conclude that a defendant who seeks to exclude evidence pursuant to Article 2, Section 8, of the Arizona Constitution must show that he or she had a legitimate expectation of privacy in the area searched. Therefore, we vacate the trial court's suppression order and remand for further proceedings.

## BACKGROUND

¶ 2 On November 14, 2000, at approximately 1:00 p.m., Arizona Department of Public Safety ("DPS") Officer Ray Butler stopped a commercial vehicle hauling a refrigerated trailer because the trailer did not have a license plate. Butler approached the vehicle and asked the driver, Gomes–Pena, and the passenger, Aldana–Juarez, for their driver licenses and logbooks. Gomes–Pena provided his commercial driver license and logbook and explained to Butler that Aldana–Juarez was not a co-driver, only a passenger. Gomes–Pena also informed Butler that he was being paid $500 by the vehicle's owner Carlos Ayala to drive it and Aldana–Juarez,

whom he did not know, to Chicago; he did not have a bill of lading because the trailer was empty; and he did not know anything about the trailer.[2] Aldana–Juarez told Butler that he did not know Gomes–Pena and that he was going to Chicago for work.

¶ 3 After inspecting the vehicle and trailer, Butler gave Gomes–Pena a copy of the vehicle examination report listing various violations and explained how to remedy the violations. Butler then asked Gomes–Pena if he could search the vehicle and trailer. Gomes–Pena verbally consented to the search and signed a consent to search form but told Butler he did not have the key to the lock on the trailer. Aldana–Juarez also signed a consent to search form and, when Butler asked him about the key, he retrieved it from the ashtray.

¶ 4 When Butler opened the trailer, it was empty except for two horizontal load support braces pushing out against the side walls. He entered the trailer and noticed that the aluminum flashing on the walls was loose in places, the rivets on the walls did not match the rivets on the door, and the silicone caulking along the sides was very thick and still wet. After additional DPS officers arrived to assist Butler, the officers used a cordless power drill to remove the rivets and look behind the aluminum flashing. Behind the flashing they found a hidden compartment where some of the insulation had been removed. The officers then transported the vehicle and trailer to the DPS office in Kingman to continue their search. They ultimately discovered and seized 108 pounds of cocaine from several hidden compartments in the walls of the trailer.

¶ 5 Both defendants were indicted for transportation of narcotic drugs for sale, a class two felony in violation of A.R.S. § 13–3408(A)(7) (1996), and possession of drug paraphernalia, a class six felony in violation of A.R.S. § 13–3415(B) (1996). Each filed a motion to suppress, alleging that the search and subsequent arrests were illegal under the Fourth Amendment to the United States

---

1. In the trial court proceedings, defendant Jose Alberto Aldana Juarez's surname was spelled alternatively Aldana Juarez, Aldana–Juarez, and Juarez. We use the hyphenated spelling.

2. At the suppression hearing, Gomes–Pena testified that he told Butler that the owner of the trailer had said that the trailer contained artificial flowers.

Constitution[3] and Article 2, Section 8, of the Arizona Constitution.[4] Following the suppression hearing, the parties filed supplemental memoranda on whether the Arizona Constitution affords greater protection than the United States Constitution by providing defendants charged with possessory crimes automatic standing to allege an unlawful search and seizure.

¶ 6 The trial court issued an eleven-page minute order granting defendants' motions. First, the trial court determined that neither defendant could allege the unlawfulness of the search and seizure pursuant to the Fourth Amendment because each lacked a legitimate expectation of privacy in the cargo area and interior walls of the trailer. *See Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (A person's capacity to claim protection of the Fourth Amendment depends on whether that person "has a legitimate expectation of privacy in the invaded place.") (citing *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Salvucci*, 448 U.S. 83, 92, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) ("declin[ing] to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched").

¶ 7 Nonetheless, relying on various provisions of the Arizona Constitution, including Article 2, Section 8,[5] *State v. White*, 118 Ariz. 47, 574 P.2d 840 (App.1977), and cases from three other states that have interpreted their constitutions as providing automatic standing for possessory crimes, the trial court ruled that neither defendant was required to show any expectation of privacy in the cargo area before challenging the lawfulness of the search and seizure.

¶ 8 The trial court then found that defendants voluntarily consented to the search of the trailer, but that the officers' dismantling of the trailer's interior walls exceeded the scope of that consent. *See State v. Swanson*, 172 Ariz. 579, 584, 838 P.2d 1340, 1345 (App. 1992) ("[C]onsent to 'take a look in the vehicle' does not encompass the further intrusion of 'tearing a car apart' by removing the door panels."). The trial court further found that the officers either lacked probable cause to remove the aluminum flashing or, alternatively, should have obtained a search warrant before doing so. The trial court subsequently granted the state's motion to dismiss the case without prejudice so the state could pursue this appeal.

## DISCUSSION

¶ 9 The trial court's interpretation of the Arizona Constitution presents a question of law that we independently review. *See Little v. All Phoenix S. Cmty. Mental Health Ctr.*, 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (1996).

¶ 10 The state argues that the Arizona Constitution does not provide defendants charged with possessory crimes automatic standing to challenge the constitutionality of a warrantless search. Instead, according to the state, a defendant may contest the lawfulness of a search and seizure pursuant to Article 2, Section 8 only if he or she has a legitimate expectation of privacy in the area searched—the same standard required for challenging a search or seizure pursuant to the Fourth Amendment of the United States Constitution.

¶ 11 Defendants counter by pointing out that no Arizona case has specifically articu-

---

**3.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."

**4.** "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

**5.** The trial court also cited Article. 2, Section 2 ("All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established

to protect and maintain individual rights."); Article 2, Section 4 ("No person shall be deprived of life, liberty, or property without due process of law."); and Article 2, Section 24 ("In criminal prosecutions, the accused shall have the right to appear and defend in person, and by counsel, to demand the nature and cause of the accusation against him...."). None of these constitutional provisions, however, are relevant to the right of a defendant to claim automatic standing to challenge an unlawful search or seizure.

**444**

lated that a defendant charged with a possessory offense is not entitled to automatic standing under the Arizona Constitution. They argue that the trial court's "automatic standing" interpretation is supported by case law in which the Arizona Supreme Court has construed Article 2, Section 8 as providing certain privacy rights regardless of their availability under the Fourth Amendment. *See State v. Ault,* 150 Ariz. 459, 466, 724 P.2d 545, 552 (1986) (deciding "not to extend the inevitable discovery doctrine into defendant's home"); *State v. Bolt,* 142 Ariz. 260, 265, 689 P.2d 519, 524 (1984) (affirming as a matter of state law that "officers may not make a warrantless entry of a home in the absence of exigent circumstances or other necessity").

**I.**

▇▇▇ ¶ 12 In *Salvucci,* 448 U.S. at 95, 100 S.Ct. 2547, the United States Supreme Court overruled *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which held that a defendant had automatic standing to challenge a search or seizure without establishing any possessory or proprietary interest in the seized item if possession of the item was an element of the charged offense, because it had "outlived its usefulness." [6] Instead, a person claiming a violation of the Fourth Amendment must have "a legitimate expectation of privacy in the invaded place." *Rakas,* 439 U.S. at 143, 99 S.Ct. 421. To be considered legitimate, a person's subjective expectation of privacy must be "one that society is prepared to recognize as 'reasonable.'" *Id.* at 143–44 n. 12, 99 S.Ct. 421 (quoting *Katz,* 389 U.S. at 361, 88 S.Ct. 507). Mere possession or ownership of a seized item is insufficient to create a legitimate expectation of privacy in the area searched. *Salvucci,* 448 U.S. at 92, 100 S.Ct. 2547;

*Rawlings v. Kentucky,* 448 U.S. 98, 104–06, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

¶ 13 The plain words of Article 2, Section 8 ("No person shall be disturbed in his private affairs, or his home invaded ....") imply that a person must show that *his* or *her* personal privacy rights were infringed before attacking the legality of a search or seizure. Defendants, however, correctly point out that *Ault* and *Bolt* established that Article 2, Section 8 may grant broader protection than the Fourth Amendment in search or seizure cases. In each of those cases, our supreme court, relying on the textual differences between Article 2, Section 8 and the Fourth Amendment, construed Article 2, Section 8 to prohibit the warrantless entry and search of a home absent exigent circumstances. *Ault,* 150 Ariz. at 466, 724 P.2d at 552; *Bolt,* 142 Ariz. at 265, 689 P.2d at 524. In both cases, the court found that the specific wording of Article 2, Section 8 reflected the framers' special concern that the sanctity of the home should be protected against warrantless entry. *Ault,* 150 Ariz. at 466, 724 P.2d at 552 (provisions of Article 2, Section 8 "are specific in preserving the sanctity of homes and in creating a right of privacy") (citing *Bolt,* 142 Ariz. at 265, 689 P.2d at 524); *Bolt,* 142 Ariz. at 265, 689 P.2d at 524 ("Our constitutional provisions were intended to give our citizens a sense of security in their homes and personal possessions.").

¶ 14 However, except in cases involving "unlawful" warrantless home entries, Arizona courts have not yet applied Article 2, Section 8 to grant broader protections against search and seizure than those available under the federal constitution. *See, e.g., Mazen v. Seidel,* 189 Ariz. 195, 199, 940 P.2d 923, 927 (1997) (holding that police officers' warrantless entry and seizure of contraband in "plain view" in a rented storage unit following ini-

---

6. The primary justification for the automatic standing rule was to avoid confronting a defendant with the "dilemma" whether to testify at a suppression hearing to facts that might result in his or her conviction at trial or to avoid self-incrimination by not mounting a Fourth Amendment challenge. *See Salvucci,* 448 U.S. at 89–90, 100 S.Ct. 2547. A defendant no longer faced this dilemma after *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) ("hold[ing] that when a defendant testifies

in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection"). *See also* Ariz. R.Crim. P. 16.2(a)(4) ("If the defendant does testify at the [suppression] hearing, neither this fact nor his or her testimony at the hearing shall be mentioned to the jury unless he or she testifies at trial concerning the same matters.").

tial lawful entry by fire fighters did not violate the Fourth Amendment or Article 2, Section 8); *State v. Krantz*, 174 Ariz. 211, 215, 848 P.2d 296, 300 (App.1992) (refusing to apply Article 2, Section 8 to extend greater protection to warrantless extraction of non-testimonial evidence than that available under federal constitution); *State v. Wedding*, 171 Ariz. 399, 407, 831 P.2d 398, 406 (App. 1992) (rejecting defendant's argument that Article 2, Section 8 does not permit detentions to obtain physical evidence upon a showing of probable cause); *State v. Calabrese*, 157 Ariz. 189, 191, 755 P.2d 1177, 1179 (App.1988) (declining to extend *Ault*'s and *Bolt*'s interpretation of Article 2, Section 8 to exclude evidence seized as a result of a warrantless search incident to an arrest that is unrelated to the crime for which the person was arrested).

¶ 15 That the right to privacy afforded by Article 2, Section 8 has not resulted in more cases being resolved on independent and adequate state grounds is not surprising because, except in the home search context, Article 2, Section 8 has historically been construed as imposing limits on search and seizure consistent with the prohibitions of the Fourth Amendment. *See State v. Pelosi*, 68 Ariz. 51, 57, 199 P.2d 125, 129 (1948) (Article 2, Section 8 "was adopted for the purpose of preserving the rights which the Fourth Amendment to the Federal Constitution was intended to protect."); *Malmin v. State*, 30 Ariz. 258, 261, 246 P. 548, 549 (1926) ("Section 8, article 2, of the state Constitution [ ], although different in its language, is of the same general effect and purpose as the Fourth Amendment, and, for that reason, decisions on the right of search under the latter are well in point on section 8[ ]."); *State v. Allgood*, 171 Ariz. 522, 524, 831 P.2d 1290, 1292 (App.1992) (The interception of a telephone conversation that is legal under the Fourth Amendment does not violate Article 2, Section 8 because "[t]he more expansive interpretation of art. II, § 8 has generally not applied beyond the home search context.").

¶ 16 Moreover, since *Salvucci* was decided in 1980, Arizona courts have consistently applied the Fourth Amendment's "legitimate expectation of privacy" requirement when determining unlawful search or seizure claims made pursuant to Article 2, Section 8. *See, e.g., Mazen*, 189 Ariz. at 198–99, 940 P.2d at 926–27 (After fire fighters lawfully entered burning storage unit, police officer's later entry was also lawful because defendant no longer possessed reasonable expectation of privacy for that area.); *State v. Millan*, 185 Ariz. 398, 402, 916 P.2d 1114, 1118 (App. 1995) ("Because we hold that under the facts of this case defendant had no reasonable expectation of privacy in luggage relinquished to airline personnel, neither the Fourth Amendment to the United States Constitution nor article 2, section 8 of the Arizona Constitution is implicated in this case."); *State v. Gissendaner*, 177 Ariz. 81, 84, 865 P.2d 125, 128 (App.1993) (Defendant, an overnight houseguest, was entitled to challenge legality of the search because he "had a legitimate expectation of privacy in [the] house which was protected by both the United States Constitution and by article 2, section 8 of the Arizona Constitution."). Thus, our state appellate courts, after *Rakas* dispensed with "standing" as a separate inquiry, have conceptually incorporated "standing" as a substantive part of our state's search and seizure law. *See also State v. Morrow*, 128 Ariz. 309, 312, 625 P.2d 898, 901 (1981) ("A search is an intrusion into an area in which a person has a reasonable expectation of privacy.").[7] Indeed, creation of an automatic standing rule is logically inconsistent with the requirement that a defendant nonetheless show a legitimate expectation of privacy in the area searched. *See State v. Taua*, 98 Hawai'i 426, 49 P.3d 1227, 1239 (2002) ("But 'automatic standing' is virtually meaningless if the proponent of a motion to suppress must still satisfy the *Katz*/Rakas test, which the proponent would be required to do *without* 'automatic standing.' ").

7. The trial court's extension of the exclusionary rule to encompass defendants who have no personal privacy interest in the area searched is further undermined by our supreme court's decision in *Bolt* that our state's procedures regarding the suppression of evidence should be construed consistently with the federal rule. 142 Ariz. at 269, 689 P.2d 519 ("We therefore, hold, for the present, that the exclusionary rule to be applied as a matter of state law is no broader than the federal rule.").

## II.

¶ 17 Against this backdrop, we consider the trial court's apparent reliance on *White* as authority for an automatic standing rule in Arizona. In that case, White, who was charged with possession of marijuana for sale, contested the search and seizure of the contents of a plane in which he alleged no proprietary or possessory interest. 118 Ariz. at 49–51, 574 P.2d at 842–44. We held that White had automatic standing because:

> In *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the Supreme Court indicated that such a possessory charge was in itself sufficient to grant standing because it would be unfair to allow the government to allege possession as part of the crime. charged and yet deny that there was possession sufficient for standing purposes.

*Id.* at 51, 574 P.2d at 844.

¶ 18 In *Brown*, however, the Supreme Court actually found that Brown, who was convicted of transporting stolen goods and conspiracy to transport stolen goods, lacked standing to contest a defective warrant used to search a store belonging to a co-conspirator because "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." 411 U.S. at 230, 93 S.Ct. 1565 (quoting *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)) (citations omitted). Indeed, *Brown* actually foreshadowed the Supreme Court's decision in *Salvucci* to abandon the automatic standing rule it established in *Jones*. 411 U.S. at 228, 93 S.Ct. 1565 ("We reserve that question [whether to overrule *Jones* ' automatic standing rule] for a case where possession at the time of the contested search and seizure is an essential element of the offense ... charged.") (internal quotations and citation omitted).

¶ 19 It appears that *White* mistakenly identified *Brown* rather than *Jones* as the source of the automatic standing rule. In any event, *White* 's application of the automatic standing rule was based exclusively on United States Supreme Court case law interpreting the Fourth Amendment that was subsequently overruled in *Salvucci*. Thus, *White* is irrelevant to defendant's claim that the doctrine of automatic standing survives in Arizona after *Salvucci*.

## III.

¶ 20 The trial court also found persuasive decisions rendered by the supreme courts in Montana, New Hampshire, and New Jersey in which those courts interpreted their own constitutions to grant automatic standing to defendants charged with possessory offenses.[8] Because the wording of the comparable constitutional provisions in those states is not similar to Article 2, Section 8,[9] those decisions are of little value in interpreting Article 2, Section 8.

¶ 21 Article 2, Section 8, however, is worded identically to Article 1, Section 7, of the Washington Constitution.[10] In *State v. Simpson*, 95 Wash.2d 170, 622 P.2d 1199, 1206 (1980), in which the defendant challenged the warrantless seizure of a stolen truck's vehicle identification number, a plurality of the Washington Supreme Court, "discern[ing] both a continuing policy basis and firm constitutional grounds" for doing so, decided to retain its automatic standing rule despite the United States Supreme Court's then recent decision in *Salvucci*.

¶ 22 Notwithstanding the similarity in wording between the Washington and Ari-

---

8. *State v. Bullock*, 272 Mont. 361, 901 P.2d 61 (1995), *State v. Settle*, 122 N.H. 214, 447 A.2d 1284 (1982), and *State v. Alston*, 88 N.J. 211, 440 A.2d 1311 (1981).

9. Mont. Const. art. 2, ¶ 11 ("The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures."); N.H. Const. pt. 1, Art. 19 ("Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions."); N.J. Const. Art. 1, ¶ 7 ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause....").

10. With minor exceptions, the entirety of Article 2 of our constitution ("Declaration of Rights") was adopted verbatim from the bill of rights contained in the Washington Constitution. *See The Records of the Arizona Constitutional Convention of 1910* 658–71, 673–81, 758–63, 893–98, 905–06 (John S. Goff ed., 1991).

zona Constitutions, however, Arizona's interpretation and application of our right to privacy provision has not paralleled that of Washington's. The Washington Supreme Court, in contrast to our supreme court, required the exclusion of illegally seized evidence in its state courts long before the United States Supreme Court applied the exclusionary rule to the states through the Fourteenth Amendment in *Mapp v. Ohio,* 367 U.S. 643, 657–59, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *Compare State v. Buckley,* 145 Wash. 87, 258 P. 1030, 1031 (1927) (announcing the rule "that it is beneath the dignity of the state and contrary to public policy for the state to use for its own profit evidence that has been obtained in violation of law") *with State v. Frye,* 58 Ariz. 409, 420, 120 P.2d 793, 798 (1942) ("We hold, therefore, that in determining the admissibility of evidence the fact that it was obtained as the result of a violation of the Fourth Amendment does not affect the issue."). Indeed, more than thirty years after *Mapp,* the exclusionary rule as it exists today in Arizona remains solely a federal exclusionary rule. *See Bolt,* 142 Ariz. at 269, 689 P.2d at 528 (declining to adopt a state exclusionary rule); *see also Calabrese,* 157 Ariz. at 191, 755 P.2d at 1179 (declining to adopt Washington's construction of its identical constitutional provision in the context of a warrantless search incident to an arrest, in part, because Arizona courts have applied the federal standard).

¶ 23 Consequently, *Simpson* is not necessarily persuasive. Significantly, shortly after the creation of the automatic standing rule in *Jones* in 1960, the Washington Supreme Court held that its state constitution also confers automatic standing on defendants charged with possessory offenses. *State v. Michaels,* 60 Wash.2d 638, 374 P.2d 989, 993–94 (1962). Thus, the question before the court in *Simpson,* given the United States Supreme Court's decision in *Salvucci,* was whether to adhere to Washington's "continuing policy," i.e., the automatic standing rule recognized in *Michaels,* and not, as here, whether to depart from settled reliance on Fourth Amendment case law on "standing." Therefore, we find *Simpson* inapposite.[11]

## CONCLUSION

¶ 24 Neither Article 2, Section 8, nor Arizona case law supports the extension of the privacy interests guaranteed by the Arizona Constitution to individuals who are unable to establish a legitimate expectation of privacy in the area searched. Therefore, we conclude that a defendant charged with a possessory offense does not have automatic standing to challenge a search and seizure in which someone else's rights may have been violated. Accordingly, we vacate the trial court's granting of the motions to suppress and remand this matter for further proceedings consistent with this opinion.

CONCURRING: DANIEL A. BARKER and SHELDON H. WEISBERG, Judges.

---

11. We note that the Washington Supreme Court has itself struggled with the application of the automatic standing rule. *Compare State v. Jones,* 146 Wash.2d 328, 45 P.3d 1062, 1064–65 (2002) (applying automatic standing rule to defendant who challenged the search of a third party's purse) *with State v. Williams,* 142 Wash.2d 17, 11 P.3d 714, 717 (2000) (finding automatic standing rule inapplicable to defendant who challenged the police officers' entry into a third party's residence to serve an arrest warrant on defendant). *See also Taua,* 49 P.3d at 1240 (characterizing the automatic standing rule as "absurd" because it gives an automobile thief the same expectation of privacy in the stolen vehicle as the true owner) (criticizing *Simpson* ).