224 P.3d 977

**STATE of Arizona, Appellant,**

**v.**

**Kendall Lee RAMSEY, Appellee.**

**No. 1 CA–CR 08–0602.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 2, 2010.

---

Terry Goddard, Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and Lisa Marie Martin, Deputy County Attorney, Maricopa County Attorney's Office, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender by Cory Engle, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

GOULD, Judge.*

¶ 1 The State of Arizona appeals from an order granting Kendall Lee Ramsey's motion to suppress evidence. For the reasons set forth below, we reverse and remand the case to the superior court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On August 19, 2007,[1] Officers M. and D. performed an investigative stop of Ramsey and recovered what was later determined to be methamphetamine. The State charged Ramsey with one count of possession or use of a dangerous drug (methamphetamine) in violation of Arizona Revised Statutes ("A.R.S.") section 13–3407 (Supp.2009).[2] Ramsey filed a motion to suppress and requested an evidentiary hearing.

¶ 3 At the suppression hearing, Officer M. testified that on August 19, 2007, at approximately 1:00 a.m., he was patrolling the area of the Marcos De Niza housing projects ("projects") in Phoenix. Officer M. testified the area was a high crime area, "known for burglaries, sexual assaults ... children being abducted from the housing projects ... homicides, shootings, stabbings that occur right around that same exact area." As he was traveling westbound in his marked patrol car with Officer D., Officer M. observed Ramsey walking eastbound on a sidewalk, approached to about fifteen feet from Ramsey, and made eye contact with him. Ramsey hesitated and stopped "midstep" when he saw the officers. Ramsey then changed his direction and started walking southbound.

¶ 4 The officers made a U-turn and attempted to locate Ramsey. The officers drove through a nearby alley, around a building, and then observed Ramsey walking southbound. Although the officers did not see Ramsey run, they noted Ramsey had covered a great distance in the short time that had elapsed since they first saw him. When the officers drove around the building, Ramsey changed his direction again and started walking westbound. At this point, the officers concluded Ramsey was attempting to avoid them. The officers began to follow Ramsey and Ramsey again changed his direction.

¶ 5 Ramsey eventually left the sidewalk and walked into the projects. In order to follow Ramsey, the officers drove over the sidewalk and onto the grass. The officers did not activate their lights or sirens as they followed Ramsey. While the officers were following Ramsey, Ramsey put his hands in his pockets and continued to walk away from them.

¶ 6 When Ramsey put his hands in his pockets, the officers feared Ramsey was attempting to grab a weapon. As the officers stopped behind Ramsey and started to exit their patrol car, Officer M. commanded Ramsey to take his hands out of his pockets and place them on his head. Ramsey ignored the officer's instructions and continued walking away with his hands in his pockets. Officer M. repeated his command a second time, and Ramsey briefly "turned back" or looked over his shoulder while he continued to walk away from the officers. As he walked away, the officers were unable to see Ramsey's hands, which remained in front of his body and in his pockets.

¶ 7 Both officers ran towards Ramsey, and Officer M. repeated his command a third time. As the officers were "putting hands" on Ramsey, Ramsey put his right hand on his head and, with his left hand, he placed a piece of clear plastic in his mouth. Officer M. said he "believed" the plastic contained crack cocaine.

---

* Pursuant to Article 6, Section 3, of the Arizona Constitution and A.R.S. §§ 12–145 to –147 (2001), the Arizona Supreme Court designated the Honorable Andrew W. Gould, Judge of the Yuma County Superior Court, to sit in this matter.

1. The transcript gives the date of August 11, 2007, but the State notes this must be in error as everything else in the file indicates the incident happened on August 19, 2007. Ramsey does not dispute the State's correction of the date.

2. Although certain statutes cited in this opinion were amended after the date officers stopped Ramsey, the revisions are immaterial. Thus, we cite to the current version of these statutes.

¶ 8 At the conclusion of the suppression hearing, the superior court ruled the officers did not have reasonable suspicion to stop Ramsey. In support of its decision, the superior court held the investigatory stop occurred when the officers pulled their car "up to Mr. Ramsey."

¶ 9 The State timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001) and –4032(6) (Supp.2009).

## DISCUSSION

¶ 10 We review de novo whether the police had reasonable suspicion to stop Ramsey. *State v. Fornof*, 218 Ariz. 74, 76, ¶ 5, 179 P.3d 954, 956 (App.2008); *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). However, "we defer to the trial court's findings of fact absent abuse of discretion." *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996); *Ornelas*, 517 U.S. at 694 n. 3, 699, 116 S.Ct. at 1160–61 n. 3, 1663.

*I. Seizure*

¶ 11 We first determine when Ramsey was "seized" within the meaning of the Fourth Amendment. Because the facts developed quickly in this case, this issue must be resolved to determine the basis for the officers' investigative stop.

■■■ ¶ 12 A seizure occurs when police either use physical force on a suspect, or a suspect yields to "a show of authority." *California v. Hodari D.*, 499 U.S. 621, 625–26, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991); *Rogers*, 186 Ariz. at 511, 924 P.2d at 1030. An investigatory pursuit does not necessarily translate into a seizure. *See Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). When police pursue a suspect after a show of authority (e.g., a command to stop), a seizure does not occur until the suspect yields to this authority. *Hodari D.*, 499 U.S. at 625–26, 111 S.Ct. at 1550; *Rogers*, 186 Ariz. at 511, 924 P.2d at 1030; *see Brower v. Inyo County*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (no seizure occurred while police pursued a suspect for 20 miles with lights and sirens; despite an adequate show of authority, suspect was not seized until he crashed into a police blockade). However, if a defendant briefly stops after a show of authority and then subsequently flees, a seizure occurs at the time the defendant first stopped, and not when he is ultimately apprehended. *Rogers*, 186 Ariz. at 511, 924 P.2d at 1030; *United States v. Morgan*, 936 F.2d 1561, 1567 (10th Cir.1991).

¶ 13 In *Hodari D.*, youths in a high crime area congregated around a car and fled when they spotted a police car. 499 U.S. at 622–23, 111 S.Ct. at 1549. One officer pursued defendant Hodari on foot. *Id.* at 623, 111 S.Ct. at 1549. Hodari tossed a packet of drugs on the ground a moment before the officer tackled him. *Id.* Based on these facts, the United States Supreme Court held Hodari was not seized until he was tackled by the officer. *Id.; see also Brendlin v. California*, 551 U.S. 249, 254, 262, 127 S.Ct. 2400, 2405, 2409, 168 L.Ed.2d 132 (2007) ("there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned" (citing *Hodari D.*, 499 U.S. at 626 n. 2, 111 S.Ct. at 1550 n. 2)).

■■■ ¶ 14 Here, the superior court concluded the seizure occurred when police officers pulled up onto the grass behind Ramsey. Although this event marked a show of authority, we disagree a seizure occurred at this point as nothing in the record supports the conclusion Ramsey yielded to the officers when they pulled up behind him. After police pulled up behind Ramsey, he continued to walk away, put his hands in his pockets, and was unresponsive to Officer M.'s commands.

¶ 15 Ramsey's reliance on *Rogers* to support the superior court's finding is misplaced. *Rogers* is distinguishable from this case because in that case the "defendant stopped, albeit briefly, and spoke to the officers before running." 186 Ariz. at 511, 924 P.2d at 1030. Ramsey did not stop or speak to the officers when they pulled up onto the grass behind him.

¶ 16 The seizure occurred in this case when Ramsey, in response to the officer's commands, took one of his hands out of his pockets and placed it on his head. This was the first occurrence where Ramsey yielded to the officers' authority. Prior to this point, Ramsey ignored the officer's commands and continued to walk away. As a result, all of Ramsey's conduct prior to this point is properly considered in determining whether the officers had reasonable suspicion to stop Ramsey.[3]

## II. Reasonable Suspicion

 ¶ 17 Officers may briefly stop an individual if, based on the totality of the circumstances, they have reasonable suspicion the individual is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *Fornof*, 218 Ariz. at 76, ¶ 5, 179 P.3d at 956. An officer's "reasonable suspicion" must be based on specific, articulable facts, along with rational inferences that arise from those facts. *Terry*, 392 U.S. at 21, 27, 88 S.Ct. at 1880, 1883; *In re Roy L.*, 197 Ariz. 441, 444–45, ¶ 8, 4 P.3d 984, 987–88 (App.2000). Similarly, an officer may conduct a weapons frisk if, based on specific, articulable facts, the officer has any reasonable fear for his safety. *Terry*, 392 U.S. at 27, 30, 88 S.Ct. at 1883, 1884–85; *State v. Garcia Garcia*, 169 Ariz. 530, 531–32, 821 P.2d 191, 192–93 (App.1991).

 ¶ 18 The reasonable suspicion standard is a lower standard than that required for probable cause to make an arrest and it requires a showing considerably less than a preponderance of the evidence. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Fornof*, 218 Ariz. at 76, ¶ 5, 179 P.3d at 956; *see In re Roy L.*, 197 Ariz. at 444–45, ¶ 8, 4 P.3d at 987–88. The United States Supreme Court explained the reasons for permitting investigative stops:

In allowing such detentions, *Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The *Terry* stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way.

*Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673, 677, 145 L.Ed.2d 570 (2000).

¶ 19 In *Wardlow*, two officers were driving in an area known for heavy narcotics trafficking. *Id.* at 121, 120 S.Ct. at 674. One of the officers observed Wardlow standing next to a building holding an opaque bag. *Id.* at 121–22, 120 S.Ct. at 674–75. Wardlow looked at the officers and fled. *Id.* at 122, 120 S.Ct. at 675. The officers pursued Wardlow in their car, and eventually cornered him on the street. *Id.* One of the officers exited the car and stopped Wardlow. *Id.* The officer frisked Wardlow's bag for weapons, discovered a handgun, and arrested him. *Id.* The Illinois Supreme Court affirmed the appellate court's reversal of Wardlow's subsequent conviction on grounds the police did not have reasonable suspicion to stop him. *Id.*

¶ 20 The United States Supreme Court reversed the Illinois Supreme Court's decision, and held there was reasonable suspicion to justify the stop. *Id.* at 123–25, 120 S.Ct. at 675–76. The Court reasoned the defendant's presence in a high crime area, in combination with his unprovoked flight from the police, was sufficient to establish reasonable suspicion. *Id.* The Court stated "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id.* at 124, 120 S.Ct. at 676.

 ¶ 21 Based on *Wardlow*, the officers had reasonable suspicion to stop Ramsey. Ramsey was walking at 1:00 a.m. in an area known for violent crime. Ramsey made several attempts to evade the officers. The

---

**3.** Ramsey's act of placing the plastic bag containing methamphetamine in his mouth was not a basis for the investigatory stop because it occurred after Ramsey placed one of his hands on his head. Once the police observed the plastic bag, they may well have had probable cause to arrest Ramsey. In this opinion, however, we do not reach the issue of whether there was sufficient probable cause to arrest Ramsey.

officers did not see Ramsey running, but they noted Ramsey moved a great distance in a short period of time. Each time the officers caught up with Ramsey, he changed directions. When the officers finally came up behind Ramsey, Ramsey put his hands in his pockets and would not remove them despite Officer M.'s repeated commands. Instead, Ramsey kept his hands in his pockets, hid them from the officers' view, and continued to walk away.

¶ 22 Citing *Wardlow*, Ramsey contends when the officers approached him, he had the right to ignore the police and go about his business. 528 U.S. at 125, 120 S.Ct. at 676 (citing *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)). However, unprovoked, evasive behavior is the "opposite" of "going about one's business," and "[a]llowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id.* at 125, 120 S.Ct. at 676.

¶ 23 Ramsey also asserts there are plausible, innocent explanations for his behavior. However, the mere fact Ramsey's evasive behavior could be viewed as innocent activity does not mean the police were unjustified in making their investigatory stop. When determining whether reasonable suspicion exists, the police are not required to rule out the possibility of innocent explanations for a defendant's conduct. *Wardlow*, 528 U.S. at 125–26, 120 S.Ct. at 677; *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 753, 151 L.Ed.2d 740 (2002). The facts constituting reasonable suspicion cannot be viewed in isolation, or subtracted in a piecemeal fashion from the whole, but must be considered in the context of the totality of all the relevant circumstances. *Arvizu*, 534 U.S. at 277, 122 S.Ct. at 753; *Fornof*, 218 Ariz. at 76, ¶ 7, 179 P.3d at 956.

¶ 24 Our decision today is also supported by *Fornof*. In *Fornof*, an officer observed a pedestrian exchange unknown items with a passenger in a car, late at night, at an intersection known for high levels of drug-related activity. 218 Ariz. at 75, 77, ¶¶ 2, 9, 179 P.3d at 955, 957. When the pedestrian saw the police officer's car approaching, he walked away quickly. *Id.* at 75, ¶ 2, 179 P.3d at 955. The car then drove away and the police followed. *Id.* The officer eventually stopped the car and, after further investigation, arrested one of the passengers. *Id.*

¶ 25 We affirmed the superior court's denial of the defendant's motion to suppress. *Id.* at 79, ¶¶ 18–19, 179 P.3d at 959. We noted each of the facts, in isolation, may have been susceptible to an innocent explanation, but when considered together were sufficient to establish reasonable suspicion. *Id.* We also noted factors such as the time of day, a high crime area, and "a suspect's hasty departure from the scene, *although falling short of flight*, may further support an officer's reasonable suspicion." *Id.* at 78–79, ¶ 17, 179 P.3d at 958–59 (emphasis added). *See also In re Roy L.*, 197 Ariz. at 444–45, ¶¶ 3, 11, 4 P.3d at 987–88 (defendant's efforts to avoid officer in a marked patrol car by walking away and changing directions was a significant factor in determining existence of reasonable suspicion).

¶ 26 In contrast to this case, there was insufficient justification for an investigatory stop in *Rogers* because:

> [T]he police said only that it was dark, that defendant and his companion emerged from behind some large bushes in a darkened residential area, walked down the middle of the road, and stared at the officers while they were making a traffic stop.

186 Ariz. at 511, 924 P.2d at 1030. One critical fact present in this case and in *Wardlow*, which is absent in *Rogers*, is the investigatory stops occurred in a high crime area. In addition, defendant's placing his hand in one of his pockets was not a basis for the investigatory stop in *Rogers* because it occurred *after* the defendant yielded to police authority, i.e., after the investigatory stop had already occurred. *Rogers*, 186 Ariz. at 511, 924 P.2d at 1030. In contrast, Ramsey placed his hands in his pockets *before* the investigatory stop took place and, therefore, this conduct was properly considered as part of the officers' basis for Ramsey's investigatory stop.

## CONCLUSION

¶ 27 We conclude there was reasonable suspicion to stop Ramsey. The investigatory stop occurred in a violent, high crime area at 1:00 a.m.; Ramsey evaded police after they attempted to follow him; Ramsey placed his hands in his pockets in response to seeing the officers approach him; and Ramsey refused to stop or remove his hands from his pockets after the officers commanded him to do so. For these reasons, we reverse the superior court and remand this case for further proceedings consistent with this opinion.

CONCURRING: SHELDON H. WEISBERG, Acting Presiding Judge and MARGARET H. DOWNIE, Judge.