NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MICHAEL MORLAN, *Appellant*.

No. 1 CA-CR 14-0822
FILED 12-22-2015

Appeal from the Superior Court in Maricopa County
No.   CR2014-110604-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Adams
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Lawrence F. Winthrop joined.

_____

**H O W E**, Judge:

**¶1**　　　　Michael Morlan appeals his convictions and probation order for possession of marijuana and drug paraphernalia. He argues that the trial court abused its discretion in denying his motion to suppress evidence because the police officers illegally seized him. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Late one evening, two police officers sat in an unmarked police car conducting surveillance in an apartment parking lot. The officers observed two people—later identified as Morlan and a female—enter the parking lot in a pickup truck and park in a secluded area furthest from the apartment buildings. The officers had a clear, unobstructed view of the truck, and although the truck had tinted windows they could see Morlan and the female inside.

**¶3**　　　　During the following hour, the officers saw Morlan and the female ignite a lighter several times and move around a lot inside the truck, lying on top of each other. The officers decided to check the truck's license plate to see if someone had reported it as stolen, but no one had. Although Morlan's truck matched the license plate and registration, the officers knew from personal experience as law enforcement officers that suspects sometimes switch stolen license plates with plates from similar vehicles to avoid detection, so they did not rule out the possibility of the truck's being stolen. Also during that hour, the officers saw the truck's headlights and taillights begin to flicker, which they believed may be related to its alarm system. Morlan then got out of the truck and walked back and forth from the driver's seat to the hood of the truck trying to get it to start. After spending five to ten minutes repeating this, Morlan got back inside the truck.

**¶4**　　　　The officers approached the truck on either side with flashlights. One officer identified himself and asked the occupants to show

their hands. Morlan, whose eyes were bloodshot and glazed and whose tongue had a green tint, immediately raised his right hand. He used his left hand, however, to "manipulat[e] something underneath his leg" between the passenger and center seats and did not raise it until two seconds later. The officer then asked the occupants to get out of the truck and stand on the curb next to it, which they did. Morlan gave the officer his name and date of birth, but that information did not appear in any of the various police databases that the officer checked. Morlan also stated that he had a valid Arizona driver's license and a clean criminal record, but the officer could not verify either claim based on the information Morlan provided.

¶5          Unable to confirm Morlan's identity, the officer believed that Morlan had provided false identification so he handcuffed him. The officer told Morlan that he would release him once he could confirm Morlan's identity. Morlan then told the officer that his identification was located inside the truck but did not know exactly where, and gave the officer permission to enter to search for it. As the officer approached the truck to look for Morlan's identification, he saw through the window a glass pipe with burnt residue sitting between the passenger seat and the center console. The officer entered the truck, removed it, and told Morlan that he had found a glass pipe. The pipe contained a usable amount of marijuana.

¶6          The State subsequently charged Morlan with felony possession of marijuana and drug paraphernalia, but later designated the charges as misdemeanors. Morlan moved to suppress the glass pipe, arguing that the officers violated his right against unreasonable seizures and guarantee of privacy under the United States and Arizona Constitutions by illegally seizing him. At the joint suppression hearing and bench trial, an officer testified that he and the other officer had three reasons to approach Morlan's truck: "[o]ne was based on the belief that [he] thought the vehicle could potentially be stolen, based on the totality of everything that was occurring," another was that "based on the light flashing inside, a flame source, [he] believed they could potentially be using drugs," and finally, "based on the movements inside the vehicle with one subject on top of the other subject, [he] believed that there could be, potentially, an indecent sex act occurring in the parking lot." After considering the evidence, the trial court denied Morlan's motion. The trial court found that "there was no duty to inspect, there was no probable cause for the officer, the officer was trying to figure out what was going on, made a warrantless approach to . . . two folks in a vehicle. The Court finds nothing unlawful about that." The trial court ultimately convicted Morlan of both misdemeanors, suspended sentencing, and imposed concurrent terms of twelve months' unsupervised probation. Morlan timely appealed.

## DISCUSSION

**¶7**        Morlan argues that the trial court erred in denying his motion to suppress the evidence because the officers lacked reasonable suspicion to stop him. We review a trial court's denial of a motion to suppress for an abuse of discretion. *State v. Payne*, 233 Ariz. 484, 502 ¶ 42, 314 P.3d 1239, 1257 (2013). But "whether an officer had a reasonable suspicion of criminal activity that justified conducting an investigatory stop is a mixed question of law and fact which we review de novo." *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996). We only consider the evidence presented at the suppression hearing and view the facts in the light most favorable to upholding the trial court's ruling. *State v. Yonkman*, 233 Ariz. 369, 371 ¶ 4, 312 P.3d 1135, 1137 (App. 2013). Because the officers had reasonable suspicion justifying their investigatory stop, the trial court did not abuse its discretion in denying Morlan's motion to suppress the glass pipe.

**¶8**        The Fourth Amendment to the United States Constitution prohibits police officers from making unreasonable searches and seizures.[1] A seizure occurs when an officer restrains a person's liberty through physical force or show of authority. *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). But an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). While officers must have more than an inchoate hunch, reasonable suspicion requires only a "minimal, objective justification for an investigatory detention." *State v. Teagle*, 217 Ariz. 17, 23 ¶ 25, 170 P.3d 266, 272 (App. 2007). This objective justification is considered against the totality of the circumstances so that officers may draw on their specialized training to form the basis for a stop. *State v. Woods*, 236 Ariz. 527, 530 ¶ 11, 342 P.3d 863, 866 (App. 2015).

**¶9**        Here, three sets of articulable facts gave the officers the requisite reasonable suspicion that criminal activity might have been afoot. First, one officer testified that he believed the truck could have been stolen because, based on his experience, he believed the truck's flickering lights may be related to its alarm system, and that even though no one had reported the truck as stolen, suspects sometimes switch the license plate to

---

[1]        Morlan also challenges the seizure based on Article 2, Section 8 of the Arizona Constitution. We note that in this context, the Arizona Constitution is no broader than the Fourth Amendment. *State v. Juarez*, 203 Ariz. 441, 444 ¶ 14, 55 P.3d 784, 787 (App. 2002).

avoid detection. Further, he testified that he saw a lighter ignite several times during the hour that Morlan remained in the truck, leading him to believe that Morlan was using illegal drugs. Finally, the officer stated that although the truck had tinted windows he could see Morlan and the female passenger move around and lie on top of each other, leading the officer to believe that the occupants were engaging in an indecent sex act. Taken in totality with the circumstances that Morlan parked in the most secluded area of the apartment parking lot and remained in the truck for an hour, these facts gave the officer the minimal, objective justification needed to conduct an investigatory stop of Morlan. The officer drew on his specialized training to create this justification and acted on more than just an inchoate hunch.

¶10　　　　Morlan counters that the police contact became nonconsensual and illegal because he yielded to police authority by raising his hands and exiting the vehicle, and because the officers did not have reasonable belief that Morlan was armed and dangerous. However, even though a seizure occurred when Morlan complied with the officer's command, reasonable suspicion supported by articulable facts permitted the investigatory stop from the initial contact. *See State v. Ramsey*, 223 Ariz. 480, 486 ¶ 27, 224 P.3d 977, 983 (App. 2010) (concluding that even though a seizure occurred, the officers had reasonable suspicion to stop the defendant). Further, police officers only need reasonable belief that a suspect is armed and dangerous to conduct a frisk after an investigatory stop, but not to conduct the investigatory stop itself as Morlan urges. *See State v. Serna*, 235 Ariz. 270, 275 ¶ 21, 331 P.3d 405, 410 (2014) (concluding that a frisk is only permissible if officers reasonably suspect both that criminal activity is afoot and that the suspect is armed and dangerous). Because a frisk did not occur here, the officers did not need such belief. Accordingly, the officers did not violate Morlan's Fourth Amendment rights because articulable facts gave the officers reasonable suspicion to justify the investigatory stop, and the trial court did not abuse its discretion in denying Morlan's motion to suppress the glass pipe.

**CONCLUSION**

¶11        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama