NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ELISEO MARTINEZ, *Appellant.*

No. 1 CA-CR 19-0463
FILED 12-3-2020

Appeal from the Superior Court in Maricopa County
No. CR2018-130714-001 SE
The Honorable Laura Johnson Giaquinto, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

**W I L L I A M S**, Judge:

**¶1**        Eliseo Martinez appeals his conviction and sentence for possession of narcotic drugs. Martinez argues the superior court erred by denying his motion to suppress evidence purportedly obtained in violation of the Fourth Amendment. For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        Chandler Police Department Sergeant David Pilkington was on patrol when he heard over his radio a description of suspects involved in a nearby vehicle theft. The Sergeant then noticed two men walking along the street who generally matched the description. Pilkington stopped his vehicle and approached the men to investigate.

**¶3**        Pilkington asked the men, one of whom was Martinez, some general questions, before asking them to sit down. Two more officers arrived. At that point, the security guard who observed the occupants of the stolen vehicle and had provided their physical descriptions to police accompanied a police officer to the location where Pilkington was detaining Martinez and Noriega. After conducting a lineup procedure, the security guard was "unsure" whether Martinez and Noriega were the individuals he saw earlier in connection with the stolen vehicle.

**¶4**        Pilkington then asked Martinez and Noriega whether he could search them.[1] Martinez consented, and Pilkington found loose Oxycodone pills in his pants pocket. Martinez did not have a prescription for the pills.

---

[1]        At trial, the parties stipulated that Sergeant Pilkington and Martinez "engaged in a legal encounter[.]" Thus, the jury was not presented with details of the encounter. We consider evidence from the suppression hearing to describe those details.

**¶5**		The State charged Martinez with possession of narcotic drugs, a class 4 felony. Before trial, Martinez moved to suppress evidence of the pills, asserting the encounter with Pilkington violated his Fourth Amendment rights. The superior court conducted an evidentiary hearing on the motion where, in addition to other evidence, the State presented a video of the encounter captured by Pilkington's body camera. The court denied the motion.

**¶6**		The jury subsequently found Martinez guilty as charged, and, given his prior criminal history, the court imposed a ten-year prison term. Martinez timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶7**		Arguing the superior court erred by denying his motion to suppress, Martinez first contends Sergeant Pilkington lacked reasonable suspicion to lawfully detain him. Martinez also asserts he did not voluntarily consent to the search Pilkington conducted. We view the evidence presented at the suppression hearing and the reasonable inferences therefrom in the light most favorable to sustaining the ruling on the motion to suppress. *State v. May*, 210 Ariz. 452, 454, ¶ 4 (App. 2005).

**¶8**		The Fourth Amendment prohibits the police from making unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). The exclusionary rule prohibits the introduction of evidence seized in violation of a person's Fourth Amendment rights. *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997). An investigatory stop is a seizure that is justified under the Fourth Amendment if it is "'supported by reasonable suspicion' that criminal activity is afoot." *State v. Rogers*, 186 Ariz. 508, 510 (1996) (quoting *Ornelas v. United States*, 517 U.S. 690, 693 (1996)).

**¶9**		The reasonable suspicion necessary to justify an investigatory stop is based on the totality of the circumstances such that the investigating officers can demonstrate "'a particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). We consider "such objective factors as the suspect's conduct and appearance, location, and surrounding circumstances, such as the time of day, and taking into account the officer's relevant experience, training, and knowledge." *State v. Fornof*, 218 Ariz. 74, 76, ¶ 6 (App. 2008). Further, the grounds for a stop must be based on "a justifiable suspicion that the

particular individual to be detained is involved in criminal activity." *Id.* at 76, ¶ 5 (emphasis omitted) (quoting *State v. Graciano*, 134 Ariz. 35, 37 (1982)).

¶10        A consensual encounter between a police officer and a citizen is not a "seizure" for Fourth Amendment purposes. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Similarly, a consensual search generally does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (noting that a search conducted without a warrant is unreasonable unless it is conducted pursuant to consent).

¶11        A ruling on a motion to suppress will not be reversed on appeal absent an error constituting an abuse of discretion. *State v. Zamora*, 220 Ariz. 63, 67, ¶ 7 (App. 2009).

I.        *The Investigatory Stop: Reasonable Suspicion*

¶12        The specific issue of "whether the police had a reasonable suspicion of criminal activity that justified conducting an investigatory stop is a mixed question of law and fact which we review *de novo*." *Rogers*, 186 Ariz. at 510.

¶13        According to the evidence at the suppression hearing, Sergeant Pilkington saw two males—Martinez and Noriega—within minutes after learning a witness reported seeing white or Hispanic males running from a stolen vehicle one-half mile away. It was approximately 1:30 a.m., and aside from Martinez and Noriega, no other pedestrians were in the area. Also, Pilkington testified that Martinez appeared "very nervous" upon seeing Pilkington approach in his patrol vehicle.

¶14        Martinez and Noriega also generally matched the description of the vehicle theft suspects. For example, the suspects were described as two Hispanic males, approximately five feet seven inches tall, one wearing "a plaid shirt and dark-colored pants," the other wearing a white T-shirt and blue jean pants. Martinez was wearing a hat, a white T-shirt with blue lettering, and dark-colored pants. Noriega was wearing long, dark-colored jean shorts, and his socks were pulled up, which, in combination, Sergeant Pilkington described as looking like pants from a distance.

¶15        To be sure, there were differences between the suspects' descriptions and Martinez's and Noriega's appearances. Only one of the suspects was described as wearing a hat—one that bore a "Cardinals" logo—while Martinez and Noriega were both wearing hats, neither of which had such a logo. Martinez was carrying a "rather large pole," and

Noriega was carrying a backpack, although neither item was included in the description of the suspects involved in the vehicle theft. Martinez was six feet one inch tall.

¶16      Focusing on those discrepancies, Martinez argues Sergeant Pilkington lacked the reasonable suspicion necessary to conduct the investigatory stop. However, a perfect match to a suspect's physical attributes is not required to justify an investigatory stop. *See State v. Kinney*, 225 Ariz. 550, 556, ¶ 15 (App. 2010) (upholding investigatory detention based on totality of circumstances where defendant "somewhat matched" suspect's physical description). And Pilkington testified at the suppression hearing that, based on his training and experience, police will generally stop and investigate individuals who match a suspect's description "somewhat, but not 100%." Specifically, Pilkington testified that Martinez and Noriega "matched the [suspects'] description close enough to warrant further investigation[.]"

¶17      Under the totality of the circumstances, notably the lack of other people in the area when Pilkington encountered Martinez shortly after the suspects were observed running from a stolen vehicle one-half mile away, coupled with Martinez's general similarity to the description of the suspects, Pilkington had a sufficiently specific and objective basis to suspect that Martinez may have been involved in the theft. Pilkington's suspicion was therefore reasonable. *See State v. Ramsey*, 223 Ariz. 480, 484, ¶ 18 (App. 2010) (standard for reasonable suspicion is lower than that required for probable cause and requires a showing that is considerably less than a preponderance of the evidence). The investigatory stop was justified under the Fourth Amendment.

*II.       The Search: Voluntary Consent*

¶18      Martinez next challenges Sergeant Pilkington's search of his pockets, arguing the superior court erred by finding the search was consensual. Martinez contends that, to the contrary, he "merely acquiesce[d] to a claim of lawful authority." According to Martinez, he was subject to "continu[al] . . . commands" during the encounter with Pilkington. Additionally, Martinez notes he observed Pilkington search Noriega before telling Noriega he could leave. Thus, when Sergeant Pilkington told Martinez, "You're going to be good to go," before asking to search him, Martinez contends he submitted to the search believing it was necessary to end his detention. Thus, Martinez claims his consent was involuntary.

¶19  We consider the totality of the circumstances to determine whether the superior court properly determined that a person voluntarily consents to a search. *State v. Acinelli*, 191 Ariz. 66, 70 (App. 1997).

¶20  The record is consistent with one aspect of Martinez's description of the encounter: Sergeant Pilkington testified at the suppression hearing that he told Martinez, "You're going to be good to go," before asking if he could search Martinez's pockets. Pilkington further testified that, in response to his request, Martinez "put his arms out in a -- almost like an airplane-type of fashion," which Pilkington construed as implied consent to conduct the search.

¶21  But contrary to Martinez's assertion that he was subject to a demonstration of Sergeant Pilkington's authority as a police officer, the video of the encounter shows Pilkington did not convey at any time that compliance with his requests was required. He never brandished a weapon, made threats, or used aggressive language; rather, he was cordial and polite during the entire encounter. And although Pilkington did inform Martinez "You're going to be good to go," the United States Supreme Court "has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." *United States v. Drayton*, 536 U.S. 194, 206 (2002).

¶22  Considered in context with the encounter's non-threatening atmosphere, Sergeant Pilkington's statement cannot reasonably be interpreted as a demand that Martinez submit unwillingly to a search before being allowed to leave. Accordingly, in reviewing the totality of the circumstances, there was sufficient evidence for the superior court to find, implicit in its order denying the motion to suppress, that Martinez voluntarily consented to the search of his person. *See H.M.L. v. State*, 131 Ariz. 385, 387 (App. 1981) (this court implies findings of fact and conclusions of law, which are reasonably supported by the record, to support superior court's judgment). The search, therefore, complied with the Fourth Amendment.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm Martinez's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA